Green Bay Fish Company, Plaintiff in error, vs. The State, Defendant in error.

*February 10—March 10, 1925.*

*Criminal law: Violation of Cold Storage Act: Evidence: Public records of sister state as to date fish were first received in storage: How certified: Stamps on boxes: Probative force: Reports to dairy and food commissioner: Articles not fit for human consumption: Prior conviction: Effect on sentence: Immaterial error.*

1. In a prosecution for violation of the Cold Storage Act by keeping fish in cold storage for more than twelve months, certified copies of letters from an Illinois plant to the Illinois department of agriculture, indicating the time when the fish were first received in storage, are not competent evidence as to the facts therein stated. p. 334.

2. Furthermore, the letters were improperly received in evidence, the alleged certification purporting to have been made in accordance with sec. 4148, Stats., which refers only to public records of the United States or of this state. To constitute the letters evidence admissible in this state they should be authenticated in the manner provided by sec. 906, ch. 17, title XIII, Revised Statutes of the United States. p. 334..

3. Stamps or markings on the boxes purporting to designate the time the fish were received in cold storage in Illinois are of no probative force, there being no proof that the boxes were received in storage on the date indicated by the stamps or that they were placed on the boxes pursuant to the Illinois law, or what force is accorded to the markings as evidence under the

laws of that state. While the courts of this state take judicial notice of the public laws of a sister state, the laws of Illinois could not impute to the markings probative force as evidence in the courts of this state. p. 335.

4. Under sec. 111.04, Stats., requiring all food received in cold storage to be reported to the state dairy and food commissioner, fish in boxes, though marked "not for human consumption," and not fit for human food, were required to be reported, since the intent of the statute is to require a report of all articles received in the nature of food, irrespective of the state of preservation. p. 337.

5. An objection to the admission of a copy of a report of a cold storage company, certified by the state dairy and food commissioner, because it was not sealed, is trivial. p. 337.

6. Courts will take official notice whether an officer of this state has a seal. p. 337.

7. The imposition of sentence, under sec. 4738, Stats., on the basis of a prior conviction, which was charged in the information but not proved, is improper, as the accused was entitled to a jury trial upon the question, and, even if the trial court took judicial notice of a prior conviction, neither the jury nor the appellate court could do so, since the record must support the judgment. p. 337.

8. The imposition of the maximum penalty provided for a first offense under sec. 111.12, Stats., though imposed, as the court stated, on the basis of a prior conviction of which there was no proof, is *held* not material error in this case. p. 338.

ERROR to review a judgment of the municipal court of Brown county: N. J. MONAHAN, Judge. *Affirmed in part; reversed in part.*

Plaintiff in error (hereinafter called the defendant) was convicted upon two counts charging violations of the Cold Storage Act which appears as ch. 111 of the Statutes. The first count charged the defendant with keeping and permitting fish, which had been held in cold storage for a longer period than twelve months, to remain in its cold-storage warehouse. The second count upon which the defendant was convicted charged it with a failure to file with the dairy and food commissioner a monthly report setting forth in itemized particulars the quantities and kinds of articles of food in its cold-storage warehouse. The defendant was sen-

tenced to pay a fine of $100 upon each count of which it was convicted. This judgment is here for review on writ of error.

For the plaintiff in error there was a brief by *Kittell, Jaseph, Young & Everson* of Green Bay, and oral argument by *Lynn D. Jaseph.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *Raymond Evrard,* district attorney of Brown county, and *Lee H. Cranston,* assistant district attorney, and oral argument by *Mr. Cranston* and *Mr. Messerschmidt.*

Owen, J. The evidence to sustain the conviction on the first count may be summarized as follows: On March 23, 1922, the defendant received into its cold-storage warehouse at Green Bay thirty-three boxes of fish shipped to it by A. E. Hallett of Chicago. On the 22d day of September, 1922, these fish came under the observation of a state dairy and food inspector. It appears that his suspicions concerning the legitimacy of these fish were aroused, and on October 30, 1922, he made another inspection of this warehouse in association with a senior inspector of the department. Upon this date they found the boxes containing the fish. The boxes were piled close together and they could not make an inspection of every box. However, they found that some of the boxes were marked as having been received into the warehouse January 19, 1922, while others were marked as having been received into the warehouse March 25, 1922. They interviewed the president of the company concerning these fish. He told them that the boxes contained trout and whitefish, that he bought them from A. E. Hallett of Chicago, and gave them two letters which he had received from Hallett, one dated March 22, 1922, the other March 23, 1922, both of which letters indicated that the fish came from A. E. Hallett of Chicago. These same inspectors made another inspection on November 21, 1922. They did not find

the boxes in the place where they were found upon their previous inspection. They did find the boxes on another floor of the warehouse, but they were empty. Upon an inspection at that time they found on some of the boxes the inscription, "Illinois Cold Storage No. 6, received March 18, 1921, and delivered March 23, 1922." They also found the lot number 95205 on the boxes. On one of these boxes they found a tag reading: "From A. E. Hallett, fresh and frozen fish, 236 N. Clark street, Chicago, Illinois." · The president of the company was not in his office, and they asked a man whom they found in charge of the smoking room what had become of the fish in question. He told them they were either smoking or in the brine in preparation for smoking.

One of the inspectors went to Chicago and called on the Illinois department of agriculture enforcing the Uniform Cold Storage Law of that state. It appears that this department called for a report from the Booth Cold Storage Company, from whose warehouse these fish were shipped to the defendant. In response to this request the Booth Cold Storage Company, under date of November 13, 1922, wrote the Illinois department as follows:

"On the 18th of March, 1921, we received forty boxes of trout for the account of A. E. Hallett stored under lot number 95205, and on the 26th of January, 1922, we delivered one box, on February 3, 1922, we delivered two boxes, on February 16, 1922, one box, February 20, 1922, one box, February 28, 1922, one box, March 21, 1922, one box, and on the 23d of March, 1922, we delivered thirty-three boxes on order from A. E. Hallett; each and every one of these boxes being marked in accordance with the Illinois Cold Storage Laws, bearing Illinois license number, date in and date out. This is for your information."

On November 14th, the next day, the same company wrote a further letter to the Illinois department as follows:

"This is to advise you that on the 23d day of March, 1922, I consigned and delivered to common carrier for shipment to the *Green Bay Fish Company,* Green Bay, Wisconsin,

thirty-three boxes of trout, said trout having been placed in the Booth Cold Storage Company, Chicago, on the 18th day of March, 1921, under lot number 95205 and remaining in the said Booth Cold Storage Company until the 23d day of March, 1922. Each and every one of these boxes being marked in accordance with the Illinois Cold Storage Law, bearing Illinois license number, date in and date out."

Copies of these letters were introduced in evidence upon the following certificate attached to each letter: "I hereby certify that this is a true copy of the original letter which is on file in this office." (Signed) "Col. C. C. Miner, Division Foods & Dairies, Asst. Supt. Ill. Dept. Agriculture."

The admission of these letters in evidence is assigned as error. That their admission was erroneous is too clear for argument. In the first place their admission did not prove any fact material in the case. If properly received, they only proved that such a letter was on file in the Illinois department. They did not constitute competent evidence of the facts therein stated. They constituted no evidence whatever of the fact that the fish were received into the warehouse of the Booth Cold Storage Company on March 18, 1921. They only constituted evidence of the fact that the Booth Cold Storage Company had so written the Chicago department. Furthermore, they were not properly certified. It is said that they were certified in accordance with sec. 4148, Stats. That section authorizes the reception in evidence of "A copy of any document or paper filed, deposited, entered, kept or recorded or of any record, made or kept pursuant to law, in any public office or with any public officer of the United States, or of this state," when certified in the manner required by sec. 4149. It will be noted that this section refers to public records of the United States or of this state. It does not refer to the public records of any other state. In order to constitute the certified copies of these letters admissible in evidence in this state it is necessary that they be authenticated in the manner provided by

sec. 906, ch. 17, title XIII, of the Revised Statutes of the United States, which requires a certificate "of the presiding justice of the court of the county, parish, or district in which such office may be kept, or of the governor, or secretary of state, the chancellor or keeper of the great seal of the state, or territory, or country, that the said attestation is in due form, and by the proper officers."

With these letters eliminated, the only evidence in the record giving rise to an inference that these fish were in cold storage for more than twelve months is the mark "Illinois Cold Storage No. 6. Received March 18, 1921, and delivered March 23, 1922," which the inspectors testified they found on some of the boxes. There is no proof in the case that these boxes were in fact received in cold storage March 18, 1921, neither does it appear that that mark was placed on these boxes pursuant to the law of the state of Illinois, nor does it appear what force is accorded to such marking as evidence under the Illinois law. While the courts of this state take judicial notice of the public laws of any state or territory of the United States (sec. 4135m, Stats.), the laws of the state of Illinois could not impute to these markings probative force as evidence in the courts of this state. We reach the conclusion that the record is barren of any evidence as to when these fish were placed in cold storage, and the conviction upon this count must be reversed.

Sec. 111.04, Stats., requires every one licensed to operate a cold-storage warehouse to submit a monthly report to the dairy and food commissioner "setting forth in itemized particulars the quantities and kinds of articles of food received in, delivered from and remaining in his cold-storage warehouse. Such monthly reports shall be filed on or before the fifth day of each month, and the reports so rendered shall show the articles of food taken in, and delivered from his cold-storage warehouse during the preceding month," etc. The second count upon which the defendant was convicted charged a violation of this provision. The defendant filed its

report with the dairy and food commissioner on the 5th day of April, 1922. It did not show that any fish had been taken into the warehouse during the month of March. It is contended by the defendant that it was not required to report the reception of these fish because they were not fit for human food. Defendant's testimony showed that the boxes containing these fish were marked "Not for human consumption." The statute requires the warehouseman to report only articles of food, and it is contended that fish unfit for human consumption is not an article of food. While this contention may be disposed of on the ground that the jury evidently found against the defendant upon its contention that the boxes were so marked, as the court charged the jury that if the defendant did not hold the fish as articles of human food to be sold as such they must find the defendant not guilty on that count, we will respond to the request of the State to pass upon the question of law as to whether it was the duty of the defendant to report the fish even though they were not held as food fit for human consumption.

The Cold Storage Act was evidently passed for the purpose of protecting the public from food unfit for human consumption. It recognizes the fact that there is a limit to the time during which food of all kinds may be held in cold storage without rendering the same unfit for human consumption. This is the dominant consideration for the public regulation of cold-storage warehouses. In order that the public may receive the protection designed, it is deemed necessary that the dairy and food commissioner have a record in the nature of a monthly report of the food passing through the warehouse. An article of food may be either wholesome or tainted, but, whether tainted or wholesome, it remains an article designated by its usual food name; and when the statute requires a licensee to report the quantities and kinds of articles of food received, the state of their preservation makes no difference with reference to the duty of the licensee

to include the same in its monthly report. To hold otherwise would greatly embarrass the public authorities in the regulation and supervision of cold-storage warehouses. Neither the letter of the statute nor the purpose of the act exempts such licensees from reporting all articles of food received into their warehouses irrespective of the state of preservation of such food. Even though the fact be established in accordance with the defendant's contention that the fish were marked "Not for human consumption," it was none the less the duty of the defendant to include the fish in question in its report furnished to the dairy and food commissioner on April 5th.

The report made by the defendant was proved by the introduction of a copy certified by the dairy and food commissioner in accordance with the statutes. This was objected to because there was no seal on the certificate and there is no evidence that the commissioner has no seal. This objection is trivial and deserves not more than passing notice. The court will take official notice whether an officer of this state has a seal. We have been referred to no statute, and we find none, requiring the dairy and food commissioner to have a seal. The conviction on this count must be sustained.

The fine imposed was $100. This is the maximum penalty provided for a first offense by the provisions of sec. 111.12. It is claimed that the court imposed sentence under the so-called repeater statute (sec. 4738, Stats.). While the information charged a prior conviction, the record contains no proof thereof, and the court was not authorized to impose sentence under sec. 4738. It is suggested that the court could take judicial notice of the prior conviction. This is strikingly incompatible with the right of the accused to meet the witnesses face to face. Furthermore, the accused is entitled to a jury trial upon this question. This plain constitutional right is recognized by sec. 4738a, Stats. Even if the trial court could take judicial notice of the prior con-

viction, neither the jury nor this court could do so, and, when examined here, the record must support the judgment. While the court stated in response to a question of counsel that the sentence imposed was because of a prior conviction, in view of the fact that the sentence imposed is authorized for a first offense it will not be considered material error in this case, although it might be so considered in cases where the penalty is severe and there is a wide range between the authorized minimum and maximum sentence.

*By the Court.*—As to the first count, the judgment is reversed and cause remanded for a new trial. As to the second count, the judgment is affirmed.